UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
JAMES KYLE BALLARD ) CASE NO. 17-10472
)
          **DEBTOR**           )

**PLAN OF REORGANIZATION**

Comes now James Kyle Ballard, Chapter 12 Debtor, in the within proceeding, and proposes the following Plan of Reorganization:

ARTICLE I

DEFINITIONS

1. "Debtor" shall mean the Chapter 12 debtor, James Kyle Ballard.

2. The "Plan" shall mean the Plan of Reorganization in its present form, or as it may be amended or supplemented.

3. The "Court" shall mean the United States Bankruptcy Court for the Western District of Kentucky, including the Bankruptcy Judge presiding in this Chapter 12 proceeding, which Court took jurisdiction over the Debtor herein as of the commencement of the case.

4. The "effective date" shall be the date on which the Order confirming the Plan becomes final and non-appealable.

5. "Claim" shall mean those certain creditors who have filed a Proof of Claim in this proceeding, or such other creditors whose claims have been acknowledged by listing same in the schedules filed herein, to the extent allowable by law, or whose claims are otherwise allowed by the Court as a creditor, herein.

6. Administrative Expense shall mean any cost or expense of administration of this Chapter 12 case entitled to priority under Section 507(a)(I) and allowable under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, actual and necessary expenses of operating the business of the Debtor, any indebtedness or obligations incurred by or assessed against the Debtor in Possession in connection with the conduct of her business, or for the acquisition or lease of property or for providing of services to the Debtor in Possession, and allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

## ARTICLE II

## **GENERAL INFORMATION REGARDING CHAPTER 12**

Creditors are not authorized to vote on the Plan; however, a creditor may object to the Plan.

The mechanics of a Chapter Plan are set forth in 11 U.S.C. Section 1222 which requires:

(1) That all or such portion of future earnings or other future income of the Debtor shall be applied to the Plan for the execution of the Plan;

(2) Either full payment, in deferred cash payments or lump sum payments to be made to all priority creditors unless the priority creditor agrees to different treatment under the Plan; and,

(3) That if the Plan classifies claims and interests within a particular class, all claims in that class are treated the same unless the particular claim or interest holder agrees to less favorable treatment.

A Chapter 12 plan may also provide that the rights of secured claimants or unsecured claimants can be modified pursuant to this Plan. A secured claimant's interest may be modified and the payment may be extended beyond the five-year maximum set forth in 11 U.S.C. Section 1222.

Any existing defaults may be cured or waived, and those defaults which are cured may be cured within a reasonable time, with the payments extending beyond the final payment of the Plan.

The Debtor may pay all or part of the claims from the property of the estate, from income of the estate, or by sale of all or a part of the property of the estate. The property of the estate at the time of confirmation vests with the Debtor.

The Plan may not provide for payment that is over a period of more than three (3) years unless the Court approves such longer period. In any event, five (5) years is the maximum length of time within which a Chapter 12 Plan can exist. There are two (2) exceptions to this, with the farmer being able to cure defaults or pay secured creditors beyond the life of the Plan.

No interest accruing after the date of the filing of the petition shall be allowed on the claims of creditors holding allowed unsecured and the under secured portion of the partially secured claims.

The holder of any allowed secured claim and the secured portion of the under secured claims provided for by the Plan shall retain its lien on its collateral, whether real property or personality securing the value of such claim until the amount of the claim that is allowed as secured is paid in full, at which time the holder shall release the lien of record.

## ARTICLE III

This is a five (5) year Plan. The Debtor's debt to secured and unsecured creditors will decrease by the amount of the Plan payments which are attributable to principal after the payment of interest as set forth in this Plan.

## ARTICLE IV

## ADMINISTRATIVE EXPENSES

1. Chapter 12 Trustee Fees. The projections indicate that the Debtor will have ample funds from which to pay Chapter 12 Trustee fees. Under the plan, the first annual payment to secured creditors equal $16,147.46 then the annual payments thereafter to secured credits will equal $24,436.88. Assuming a Trustee commission of five (5%) percent, the annual Projected Net Disposable Income is sufficient to satisfy the Trustee's fees and expenses.

2. Attorney Fees and Other Administrative Expenses. As of August 4, 2017, attorney fees and expenses valued at approximately $3,500.00 had been incurred. Counsel for the Debtor holds $925.00 in escrow to be applied to said fees and expenses, once court approval has been received. Any balance which remains unpaid after the application of the escrowed retainer must be paid out of the Projected Net Disposable Income.

## ARTICLE V

## **EXPLANATION AND OVERVIEW**

1.  Future Income. The Debtor submits all future earnings or other future income to the supervision and control for the trustee and agrees to pay to the trustee all of his net disposable income during the term of this plan. The Debtor commits to pay sufficient monies to the trustee for the benefit of his unsecured creditors, so that said creditors receive more than they would have received in a hypothetical Chapter 7 liquidation filed on the effective date of the plan.

2.  Status of Current Farming Operation. Debtor has approximately:

| | |
|---|---|
| 30 Mixed Aged Cows | 10 Mixed Young Cows |
| 1 Red Bull | 6 Large Heifer Calves |
| 3 Larger Bull Calves | 8 Small Heifer Calves |
| 6 Bull Calves | 150 Mama Hair Sheep |
| 6 Rams | |

Debtor plans to sell 10 calves in September 2017 and 35 lambs in November 2017 to fund his operations.

Debtor is growing 6 acres of tobacco for the year of 2017 and anticipates growing 17 acres per year in 2018 and forward. Debtor's grandfather has helped him to get reestablished by providing the tobacco plants for the year 2017.

3.  Classification of Claims and interests. Claims shall be divided into the following classes:

A. Claims secured by real property. Each such claim shall be treated separately.

  B. Claims secured by farm-related personal property. Each such claim shall constitute a separate class.

  C. Claims secured by crop production proceeds.

  D. Priority claims. All claims entitled to priority under 11 U.S.C. Section 507 will be treated in Class D.

  E. Unsecured claims. A creditor whose claim is secured by collateral which is less in value than the amount of their claim will have their secured claim reduced to the value of such collateral; and the under secured portion of their claim will be deemed an unsecured claim and dealt with as such in Class E.

 Secured claims to be treated within classes A and B and C will be described by (1) name of creditor, (2) amount owed, (3) security for the debt and (4) value of the secured property. The method of payment, by amounts and intervals, will be defined for each class. Periodic payments to certain secured creditors will extend beyond the life of the plan, but nevertheless are considered part of the plan. Modification of the rights of holders of secured claims will be described within each class. Each secured creditor shall retain its lien until the allowed secured claim is paid in full.

 Unsecured claims are treated within Class E and will be paid at such times and in such amounts as the trustee shall determine. No interest will be paid on unsecured claims. Unmatured interest will be rebated in determining the allowed amount of any claim.

# ARTICLE VI

## CLASSIFICATION OF CLAIMS AND TREATMENT OF CLASSES OF CREDITORS

**CLASS A-1:**

Class A-1 represents the fully secured claim of Edmonton State Bank secured by a 1991 Fleetwood Camper (Debtor's residence, no real estate). This claim will be paid over a five (5) year period with interest at the rate of 4% per annum. The first annual payment will be $416.81 then $455.62 the next 4 years which shall be paid by the Chapter 12 Trustee starting in May 2018.

**CLASS B-1**:

Class B-1 represents the fully secured claim of Capital One Retail Services/Kawasaki, secured by a 2015 Kawasaki 325 4-wheeler used for work on the farm. This claim will be paid over a five (5) year period. An annual payment of $500.00 shall be paid by the Chapter 12 Trustee starting in May 2018.

**CLASS B-2:**

Class B-2 represents the fully secured claim of USDA Farm Service Agency, secured by crops, farm equipment, livestock, and FSA Program payments. This claim will be paid over a five (5) year period with interest at the rate of 2.39% per annum. The first annual payment will be $15,595.00 then $23,481.26 the next 4 years which shall be paid by the Chapter 12 Trustee starting in May 2018.

**CLASS C-1:**  See Class B-2 above

**CLASS D:**

    Priority claims.  Kentucky Department of Revenue will be paid in one lump sum payment in the amount of $135.65 by the Chapter 12 Trustee in May 2018.

**CLASS E:**

    Class E represents the unsecured claims of debtor.  Debtor estimates his total unsecured debt at less than $30,000.00.  Debtor will pay to the Trustee a minimum of $1,500.00  the first year then a minimum of $2800.00 for the next 4 years, for a total five year period to allow the Trustee to make disbursements to the unsecured creditors and to pay Chapter 12 Administrative Expenses, Trustee Fees, and Attorney Fees.  Debtor will make his first payment by April 1, 2018.

### ARTICLE VII

### DISPOSABLE INCOME AND EXPENSES
### ANTICIPATED INCOME AND EXPENSES FOR 2017

Tobacco Crop, 6 acres at an estimate of 10,000 lbs: $20,000.00

10 Calves and 35 Lambs at an estimate of $10,375.00

### ESTIMATED 2017 YEARLY EXPENSES

| | |
|---|---|
| Fuel | $800.00 |
| Feed | $1,000.00 |
| Fertilizer & Chemicals | $1,000.00 |
| Repairs | $165.00 |

| | |
|---|---|
| Electric and Phone | $100.00 |
| Crop Insurance | $1,033.00 |
| Accounting Fees: | $155.00 |
| Hired Labor (tobacco) | $3,000.00 |
| Food, gasoline, entertainment, clothing and utilities (living expenses): | $6,140.00 |

Total Expenses: $13,393.00

## DISPOSABLE INCOME AND EXPENSES
## ANTICIPATED INCOME AND EXPENSES FOR 2018

Tobacco Crop, 17 acres at an estimate of 30,000 lbs: $60,000.00

20 calves @ $500.00 each: $10,000.00

75 lambs @ $100.00 each: $7,500.00

## ESTIMATED 2018 YEARLY EXPENSES

| | |
|---|---|
| Fuel | $ 1,000.00 |
| Feed | $11,000.00 |
| Shots & Meds | $ 2,000.00 |
| Tobacco Plants | $ 4,000.00 |
| Fertilizer & Chemicals | $ 4,000.00 |
| Repairs | $ 2,000.00 |
| Electric and Phone | $ 100.00 |
| Crop Insurance | $ 3,000.00 |

Accounting Fees: $ 155.00

Hired Labor (tobacco) $ 12,000.00

Food, gasoline, entertainment, clothing and utilities (living expenses): $11,000.00

Total Expenses: $ 50,255.00

## ARTICLE VIII

### LEASES AND EXECUTORY CONTRACTS

Any lease or executory contract not specifically assumed by the Debtor is hereby deemed rejected. Debtor has a verbal agreement with his grandfather for the use of farmland.

## ARTICLE IX

### PROOF OF CLAIMS REQUIREMENT

All members of classes of Creditors, must file a Proof of claim as directed by subsequent order of this Court.

**UNLESS A CREDITOR FILES A TIMELY PROOF OF CLAIM, THE CLAIM SHALL BE BARRED AND EXINGUISHED AND NO DISTRIBUTION SHALL BE RECEIVED BY THAT CREDITOR FROM THE DEBTOR AND THE DEBTOR SHALL BE DISCHARGED FROM THE DEBT.**

## ARTICLE X

## OPERATION OF BUSINESS

Upon confirmation of the Plan, Debtor shall operate the farm using the assets with supervision of the Court/Trustee. Debtor shall retain all ownership of the property of the estate.

## ARTICLE XI

## RESERVATION OF RIGHTS

Notwithstanding the various provisions of the within Plan, the Debtor has reserved certain rights as follows:

1. The Debtor may file an objection to any claim after the date the Order confirming the Plan becomes final and appealable. Objections shall not be filed as to any claims for administrative allowances, since same shall only be appealable pursuant to the terms of the United States Bankruptcy Code and the Bankruptcy Rules of Procedure.

2. Notwithstanding the confirmation of this Plan, the Debtor shall retain all property of the estate and all causes of action they maybe under the United States Bankruptcy Code and under applicable Kentucky law, and the Debtor shall be authorized to prosecute such actions as fully and completely.

3. Notwithstanding applicable state law, the definitions and procedures embodied in this Plan shall be controlling on the Debtor and the creditors treated herein, subject to interpretation thereof by this Court.

4. Subject to confirmation, the Section 362 automatic stay contained in the United States Bankruptcy Code and the Bankruptcy Rules of Procedure, as applicable in this case, shall continue in effect and subject to the terms of this Plan if applicable, until final consummation of this Plan.

## ARTICLE XII

## AMENDMENTS

The Debtor may propose amendments or modifications of this Plan at any time prior to confirmation.  After confirmation, the Debtor may, so long as it does not materially or adversely affect the interests of the creditors, remedy any defect or omission or reconcile any inconsistencies of this Plan, or in any Order of Confirmation, in any such manner as may be necessary to carry  out the purposes and effect of this plan, and shall also have the right to apply to this Court for an amendment or notification, which shall be granted only upon a notice to all creditors an interested parties, and upon the entry of an Order of this Court.

## ARTICLE XIII

## JURISDICTION OF THE COURT

The Court will retain jurisdiction under this Plan until this Plan has been fully consummated, including, but not limited to, the following purposes:

1. The classification of any claim of any creditor and the re-examination of claims which have been allowed and the determinations of such objections as may be

filed to creditors' claims.   The failure by the Debtor to object to or examine any claim shall not be deemed to be a waiver of the Debtors' right to object to, or re-examine the claim, either in whole or in part.

2.  The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes an intent of this Plan.

3.   The modification of this Plan prior to and after confirmation pursuant to the Bankruptcy Rules, the United States Bankruptcy Code, and the terms contained in the within Pan.

4.  Determination of all questions, and disputes regarding title to the assets of the estate and any priorities thereto, and the determination of all causes of action, controversies, disputes or conflicts between the Debtors and any other party which are pending prior to confirmation.

5.  To enforce and interpret the terms and conditions of the Plan.

6.  The entry of any order, necessary to implement the Plan, or Order of Confirmation, including without limitation such declaratory and injunctive orders as are appropriate to protect the Debtor, the Debtor's estate and the holders of the claims.

**ROGERS & DRIVER**
**Attorneys at Law PSC**
102 East Public Square
Glasgow, Kentucky 42141-2602
(270) 651-2258

By:    s/Benjamin D. Rogers
Benjamin D. Rogers

**Certificate of Service**

It is hereby certified that I have electronically filed this document through the ECF system, which will send a notice of electronic filing to: Hon Mark Little, 1917 Versnick Drive, Madisonville KY 42431 and a copy was mailed to:

David T Reynolds  
2200 East Parrish Avenue  
Building C, Suite LL 104  
Owensboro KY 42303

Katherine A Bell  
717 West Broadway  
Louisville KY 40202

This the 15th day of September, 2017.

By:    s/Benjamin D. Rogers  
       Benjamin D. Rogers